UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KURT HIPP, et al., | No. 2:25-cv-01806-DJC-SCR |
| Plaintiffs, | |
| v. | TEMPORARY RESTRAINING ORDER |
| THE CITY OF VALLEJO, | |
| Defendant. | |

Plaintiffs are four unhoused individuals currently living in and around the parking areas in the vicinity of the Vallejo City Hall. Plaintiffs have filed the present action along with an ex parte Application for Temporary Restraining Order in connection with the City's plan to evict Plaintiffs and others currently residing in this area. Plaintiffs assert that despite their making requests for reasonable accommodations for their disabilities, the City has not provided accommodations, contacted them about their disabilities, or otherwise communicated with them about their requests. Plaintiffs also claim that the City's actions in evicting them violate the Fourteenth Amendment state-created danger doctrine and due process clause.

In their Application for Temporary Restraining Order, Plaintiffs request that the Court order the City to not execute its plan to evict Plaintiffs from their temporary

residences. For the reasons stated below, Plaintiffs' Application (ECF No. 5) is granted. A hearing on whether a preliminary injunction should issue is set for July 11, 2025.

## BACKGROUND

Plaintiffs are four unhoused individuals living in the City of Vallejo. Each Plaintiff lives in or around the parking areas near the Vallejo City Hall, Vallejo Library, and Vallejo Ferry Terminal. (Compl. (ECF No. 1) at 5–6.)[1] On May 22, 2025, City of Vallejo Assistant City Manager Natalie Peterson posted a written notice of eviction near Plaintiffs' residences. (*Id.* at 7.) The notice informed Plaintiffs and others living in that area that they would be evicted in 5 days' time. (*Id.*) Susan Masson, another unhoused resident at this location who is not a party to this action, states that Peterson told Masson and others that "the City of Vallejo was not going to honor any Reasonable Accommodation Requests under the Americans with Disabilities Act, and [Peterson] implied that we should not bother to fill them out." (*Id.*; ECF No. 1-2 at 26, ¶ 3.) On May 27, 2025, Plaintiff Kurt Hipp and Plaintiff M.T., through his mother, Plaintiff Corletta Tate[2], submitted requests for reasonable accommodations for their disabilities under Title II of the Americans with Disabilities Act. (Compl. at 7.) On that same day, Peterson and another City employee, Flor Magallanes, informed residents that the evictions were temporarily halted to address accommodation requests the City had received. (*Id.*)

During the week of June 12, 2025, Magallanes spoke with Plaintiff Tate and informed her that she and her son would be evicted on June 30, 2025. (*Id.* at 8.) On June 13, 2025, this eviction date was confirmed when the City posted a notice on its

---

[1] Plaintiffs have not provided internal pagination for their Complaint and several exhibits are combined within a single file. (*See* ECF Nos. 1, 1-1, 1-2.) To ensure clarity, for all citations in this Order to documents provided by Plaintiffs the Court utilizes the Bate stamped page numbers.

[2] Within Plaintiffs' Application there is a document that seems to request that either Plaintiff Tate be appointed as guardian ad litem for Plaintiff M.T. or the counsel be appointed. Plaintiffs must any such request must be made by separate motion.

2

website that stated that "encampment clean-ups" in the downtown Vallejo area where Plaintiffs reside would resume on June 30, 2025. (*Id.*) This notice also stated that "City staff began reengaging with the individuals that requested ADA accommodations (from the original clean-up scheduled for May 27th) and will continue outreach efforts prior to the clean-up beginning." (*Id.*; ECF No. 1-1 at 8.) On June 22, 2025, Plaintiff Watson also submitted a request for reasonable accommodations in connection with her disability. (Compl. at 8.)

On June 26, 2025, a new notice was posted informing Plaintiffs that evictions would occur on June 30, 2025. (*Id.*) To date, Plaintiffs Hipp, Tate/M.T., and Watson each represent that they have not been provided with any accommodations or been contacted by anyone from the City of Vallejo about their disabilities or their requests. (*Id.* at 7–8.)

Plaintiffs filed the present case alleging violations of Title II of the ADA and the Fourteenth Amendment on both state-created danger doctrine and due process grounds. Plaintiffs also filed an ex parte Application for Temporary Restraining Order seeking to enjoin the City's planned eviction of Plaintiffs.[3] (ECF No. 5.)

## LEGAL STANDARD

A temporary restraining order may be issued upon a showing "that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." Fed. R. Civ. P. 65(b)(1)(A). The purpose of a temporary restraining order is to preserve the status quo and to prevent irreparable harm "just so long as is necessary to hold a hearing, and no longer." *Granny Goose Foods, Inc. v. Bhd. of Teamsters*, 415 U.S. 423, 439 (1974).

In determining whether to issue a temporary restraining order, courts apply the factors that guide the evaluation of a request for preliminary injunctive relief, which

---

[3] Plaintiffs' Application is brief and simply incorporates their Complaint by reference. Plaintiffs' Complaint is more akin to a traditional application for temporary restraining order but sufficiently serves both as a complaint and an application for temporary restraining order. In light of their pro se status, Plaintiffs' Complaint and Application are sufficient in combination.

1  are: (1) a likelihood of success on the merits; (2) irreparable harm in the absence of
2  preliminary relief; (3) the balance of equities; and (4) the public interest.  *See Winter v.*
3  *Natural Res. Def. Council, Inc.,* 555 U.S. 7, 20 (2008); *see also Stuhlbarg Int'l Sales Co.*
4  *v. John D. Brush & Co.,* 240 F.3d 832, 839 n.7 (9th Cir. 2001) (explaining that the
5  analysis for temporary restraining orders and preliminary injunctions is "substantially
6  identical").  The Ninth Circuit also employs the "serious questions" test, which states
7  "serious questions going to the merits and a balance of hardships that tips sharply
8  towards the plaintiff can support issuance of a preliminary injunction, so long as the
9  plaintiff also shows that there is a likelihood of irreparable injury and that the
10 injunction is in the public interest."  *All. for Wild Rockies v. Cottrell*, 632 F.3d 1127,
11 1135 (9th Cir. 2011) (internal citations and quotations omitted).

**DISCUSSION**

**I.    Notice**

Plaintiffs indicate that they provided the City with notice of their intent to seek a temporary restraining order.  (ECF No. 5-1 at 1.)  Plaintiffs represent that notice was given via email to Vallejo City Attorney Veronica Nebb.  (*See* ECF No. 1 at 9; ECF No. 1-2 at 5, ¶ 29.)  As such, based on the representations in their Application, Plaintiffs have complied with the Local Rules regarding notice to Defendant or Defendant's counsel.  *See* Local Rule 231(a).

**II.   Application of the *Winter* Factors**

The Court finds that Plaintiffs are entitled to a Temporary Restraining Order under the serious questions test.  *First*, Plaintiffs have established that they will suffer irreparable in the absence of preliminary injunctive relief.  Other courts have recognized that in some circumstances eviction can constitute irreparable harm.  *See e.g.*, *Park Village Apartment Tenants Ass'n v. Mortimer Howard Trust*, 636 F.3d 1150, 1159 (9th Cir. 2011); *Knight v. Richardson Bay Reg'l Agency*, 637 F. Supp. 3d 789, 800 (N.D. Cal. 2022); *Volis v. City of Los Angeles Hous. Auth.*, No. 2:13-cv-01397-MMM-SP,

4

2014 WL 12704885, at *3 (C.D. Cal. Jan. 7, 2014); *Stean v. Wells Fargo & Co.*, No. 3:09-cv-01272-JSW, 2009 WL 1405912, at *2 (N.D. Cal. May 18, 2009).

Plaintiffs have also submitted declarations describing their unique situations and the harm that they will suffer should they be evicted. Plaintiff Hipp, who is HIV positive, states that he relies on his present close access to the library's Wi-Fi to get updated information to manage his HIV and seek housing. (ECF No. 1-2 at 3, ¶ 11.) He also states that his present location puts him in proximity to an HIV clinic where he can receive treatment (*id.* at 1, ¶ 2) and a church that provides hot meals, showers, and laundry (*id.* at 3, ¶ 11). Plaintiff Tate states that she and her autistic minor son, Plaintiff M.T. rely on their present location to provide M.T. with a stable environment. Specifically, Tate and M.T. that the library provides a location where M.T. can escape overstimulation and have some socialization with other children. (*Id.* at 10, ¶ 16.) Plaintiff Tate also says that M.T. relies on routine and that changes to his routine present serious challenges. (*Id.* at 11, ¶ 18.) Plaintiff Watson, who claims to suffer from PTSD, says that her current location provides her a safe, public, and well-lit location that prevents her PTSD from becoming triggered and allows her to manage her disorder. (*Id.* at 19, ¶ 6–7.)

The circumstances unique to each Plaintiff further confirms that Plaintiffs will suffer irreparable harm if they are evicted. Moreover, constitutional violations may alone constitute irreparable harm. *Associated Gen. Contractors of Cal., Inc. v. Coal. of Econ. Equity*, 950 F.2d 1401, 1412 (9th Cir. 1991). Based on the information presented, the Court concludes that Plaintiffs will suffer irreparable harm if they are evicted from their current residences.

*Second*, the balance of hardship strongly weighs in Plaintiffs' favor. There is no evidence presently before the Court that a short delay to the planned evictions will cause any meaningful hardship to the City. Plaintiffs have alleged that the City has delayed these evictions on at least one prior occasion. This indicates that there is no urgent need for the removal of Plaintiffs. On Plaintiffs' side of the hardships, Plaintiffs'

1 loss their limited housing and stability – along with the unique harms that Plaintiffs
2 represent they will suffer – will create a substantial hardship.  As such, the balance of
3 hardships tips clearly in Plaintiffs' favor.
4      *Third*, because the balance of hardships weighs clearly in Plaintiffs' favor,
5 Plaintiffs need only demonstrate that there are serious questions going to the merits.
6 Under Title II of the ADA, "no qualified individual with a disability shall, by reason of
7 such disability, be excluded from participation in or be denied the benefits of the
8 services, programs, or activities of a public entity, or be subjected to discrimination by
9 any such entity." 42 U.S.C. § 12312.  This requires that public entities, such as the City,
10 make "reasonable modifications" to their policies, practices, and procedures to avoid
11 discrimination on the basis of disability.  *McGary v. City of Portland*, 386 F.3d 1259,
12 1266 (9th Cir. 2004).  The exception to this is where such modification would
13 "fundamentally alter the nature of the service, program, or activity."  *Id*.  A "benefit"
14 under Title II may include "sufficient time to comply with the City's code enforcement
15 activities in a manner consistent with his disability."  *Id*. at 1270.
16      Plaintiffs allege that despite their requests for accommodations for their
17 disabilities, the City has not provided them with any accommodations.  Plaintiffs
18 further allege that the City has not contacted them about their disabilities or possible
19 accommodations.  The City's actions suggest that they agree that those with
20 disabilities who would be evicted are entitled to some form of reasonable
21 accommodations under the ADA.  The June 13, 2025 post on the City's website
22 regarding the upcoming evictions (attached as Exhibit C to Plaintiffs' Application)
23 states "City staff began reengaging with the individuals that requested ADA
24 accommodations (from the original clean-up scheduled for May 27th) and will
25 continue outreach efforts prior to the clean-up beginning." (ECF No. 1-1 at 8.)
26      This record suggests that Plaintiffs may be entitled to reasonable
27 accommodations.  Plaintiffs' allegations that the City has not provided any
28 accommodations, communicated with them regarding their disabilities, or otherwise

responded to their reasonable accommodation requests, are sufficient to establish that there exist serious questions on the merits of Plaintiffs' claims.

*Fourth*, the public interest favors the granting of the temporary restraining order. The public has an interest in the enforcement of the ADA. *See Enyart v. Nat'l Conf. of Bar Examiners*, 630 F.3d 1153, 1167 (9th Cir. 2011). The issuance of a temporary restraining order ensures that the parties can be fully heard, and the Court can determine whether a preliminary injunction should be granted.

As Plaintiffs have shown that they face irreparable injury should they be evicted, the balance of hardships tips clearly in their favor, that the public interest favors a temporary restraining order, and that there are serious questions going to the merits of Plaintiffs' claims, a temporary restraining order is warranted under the *Winter* factors. Given the short time before eviction actions are set to begin and the irreparable harm Plaintiffs face, the Court grants Plaintiffs' Application for Temporary Restraining Order on an ex parte basis.

### III.    No Bond Shall Be Required

Given that the Court will only delay the City's eviction actions until the Court can determine if a Preliminary Injunction is warranted and that there is no indication from the record before the City will suffer damages from that delay, the Court finds that no bond is necessary. *See Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*, 321 F.3d 878, 882 (9th Cir. 2003); *see also Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003). Accordingly, the Court waives Plaintiffs' requirement to post bond.

### CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that:

1. Plaintiffs' Ex Parte Application for Temporary Restraining Order (ECF No. 5) is GRANTED.
    a. Defendant City of Vallejo, its employees, and/or agents are enjoined from conducting the eviction of:

7

       i. Plaintiff Kurt Hipp at his temporary residence on the grass next to the city hall and library parking lots,

       ii. Plaintiffs Corletta Tate and M.T. at their temporary residence near the library, and

       iii. Plaintiff Watson from her temporary residence near the overflow parking lot for the Vallejo Ferry Terminal.

    b. This Order shall expire on July 12, 2025, at 5:00 PM unless extended by further order of this Court.

2. A hearing on Plaintiffs' Motion for Preliminary Injunction is set for July 11, 2025, at 1:30 PM, before District Judge Daniel J. Calabretta.

    a. On or before July 7, 2025, Defendant shall file their Opposition to Plaintiffs' Motion.

    b. On or before July 10, 2025, Plaintiffs may file a Reply.

    c. Plaintiffs are directed to inform the Court by June 3, 2025, whether they prefer that the hearing be conducted in person or via Zoom.

Dated: June 28, 2025

THE HONORABLE DANIEL J. CALABRETTA
UNITED STATES DISTRICT JUDGE