1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

9

FOR THE EASTERN DISTRICT OF CALIFORNIA

10
11    KURT HIPP, et al.,                              No. 2:25-cv-01806-DJC-SCR
12                    Plaintiffs,
13            v.                                       ORDER
14    THE CITY OF VALLEJO,
15                    Defendant.
16
17
18        The City of Vallejo has been engaged in efforts to remove encampments of

19    unhoused individuals near the Vallejo City Hall.  The Court previously issued a

20    Temporary Restraining Order enjoining the City from removing the four Plaintiffs from

21    their temporary residences in this area on the basis that the City had not provided

22    reasonable accommodations for Plaintiffs' disabilities or communicated with Plaintiffs

23    about possible accommodations for their disabilities.  Plaintiffs seek a preliminary

24    injunction that would continue to enjoin the City from removing them from their

25    present location.

26        As the Supreme Court has recognized, many believe that "homelessness may

27    be the defining public health and safety crisis in the western United States today."  *City

28    of Grants Pass, Or. v. Johnson*, 603 U.S. 520, 528 (2024) (cleaned up).  The Court

1    further observed that California is home to half of the nation's unhoused population,

2    *id.*, and the City of Vallejo seems to be no exception to this crisis.  Plaintiffs,

3    understandably, have attempted to create some sort of shelter while searching (in

4    vain) for housing.  While the Supreme Court has concluded that jurisdictions such as

5    the City of Vallejo may, consistent with the Eighth Amendment to the United States

6    Constitution, enforce anti-camping ordinances such as the ones at issue in this case, it

7    is incumbent on those entities to fully comply with all other constitutional, statutory,

8    and regulatory obligations.  It was the City's apparent failure to comply with its

9    obligations under the Americans with Disabilities Act ("ADA") that led the Court to

10    issue a Temporary Restraining Order.  However, that was only a provisional remedy to

11    prevent Plaintiffs' removal until the Court could hear further argument as to whether a

12    preliminary injunction was warranted.  In the period since the Temporary Restraining

13    Order was issued, it appears that the City has met its obligations to provide

14    reasonable accommodations to Plaintiffs.

15    The Court is sympathetic to the plight presented by Plaintiffs, who appear to be

16    sincere in their desire to find housing, and whose disabilities make their lack of

17    housing all the more intolerable.  But the power of this Court is limited.  The primary

18    law Plaintiffs employ to challenge the City's actions – the Americans with Disabilities

19    Act – simply does not contemplate the creation of new housing or the indefinite

20    nullification of the City's anti-camping ordinance.  Finding that the Plaintiffs are

21    unlikely to succeed under that law and the constitutional challenges presented in the

22    Complaint, the Court has no choice but to deny Plaintiff's Request for a Preliminary

23    Injunction (ECF No. 5).

24    **BACKGROUND**

25    Plaintiffs are four unhoused individuals currently residing in temporary housing

26    locations near the Vallejo City Hall.  Plaintiffs face disabilities that multiply the

27    challenges of their unstable housing situations.  Plaintiff Kurt Hipp must manage his

28    HIV-positive status, a seizure disorder, and a learning disability.  Plaintiff Corletta Tate

1  has two children, including Plaintiff M.T., who is autistic, susceptible to overstimulating

2  environments, and only able to walk on the balls of his feet.  Plaintiff Deshawnda

3  Watson has been diagnosed with PTSD and anxiety resulting from mental and

4  physical abuse she previously suffered.  Plaintiffs filed suit seeking to prevent the City

5  of Vallejo from enacting plans to remove them from their current housing locations.

6  The Court issued a Temporary Restraining Order as it appeared the City had failed to

7  communicate with Plaintiffs or offer them reasonable accommodations for their

8  disabilities.

9        In the time since that order, the City conducted its encampment removal efforts

10  in the area near the Vallejo City Hall.  Due to the Court's prior order, Plaintiffs were

11  permitted to remain in their locations and were not removed.  (Opp'n (ECF No. 13) at

12  5.)  The City submitted an Opposition to Plaintiffs' Motion for Preliminary Injunction on

13  July 7, 2025.  (*See id.*)  Therein, the City stated that as accommodations the City would

14  permit Plaintiffs to remain in their current locations until July 25, 2025, the City would

15  provide at least 90 days of storage (with the possibility for additional storage time),

16  and the City could also give Plaintiffs transport to housing, through their IHART

17  program, should they successfully secure housing.  (*Id.* at 5, 10)  In their Reply,

18  Plaintiffs reiterated a desire to remain in their present location until they obtain

19  permanent housing.  (*See* Reply (ECF No. 22).)  At oral argument, Counsel for the City

20  again stated their willingness to provide the above accommodations.  When directly

21  asked by the Court if there were other accommodations Plaintiffs needed, the only

22  accommodations Plaintiffs identified were to remain where they were or to receive

23  hotel vouchers.  At the conclusion of the hearing, the Court ordered the Temporary

24  Restraining Order extended through July 25, 2025, at which time it would expire.  On

25  July 24, 2025, the day before the Temporary Restraining Order was set to expire,

26  Plaintiffs filed a supplemental brief.  (Suppl. Br. (ECF No. 25).)

27  ////

28  ////

1

**LEGAL STANDARD**

2     "A preliminary injunction is an extraordinary remedy never awarded as of right."

3  *Winter v. NRDC, Inc.*, 555 U.S. 7, 24 (2008) (citation omitted).  "A plaintiff seeking a

4  preliminary injunction must establish that he is likely to succeed on the merits, that he

5  is likely to suffer irreparable harm in the absence of preliminary relief, that the balance

6  of equities tips in his favor, and that an injunction is in the public interest." *Id.* at 20.  A

7  preliminary injunction may only be awarded "upon a clear showing" of evidence that

8  supports each relevant preliminary injunction factor.  *Id.* at 22.  "This 'clear showing'

9  requires factual support beyond the allegations of the complaint, but the evidence

10  need not strictly comply with the Federal Rules of Evidence." *CI Games S.A. v.

11  *Destination Films*, No. 2:16-cv-05719-SVW-JC, 2016 WL 9185391, at *11 (C.D. Cal.

12  Oct. 25, 2016).

13     Alternatively, in the Ninth Circuit, "'serious questions going to the merits' and a

14  hardship balance that tips sharply towards the plaintiff can support issuance of an

15  injunction, so long as the plaintiff also shows a likelihood of irreparable injury and that

16  the injunction is in the public interest." *Alliance for the Wild Rockies v. Cottrell*, 622

17  F.3d 1045, 1053 (9th Cir. 2010).  Serious questions are those "which cannot be

18  resolved one way or the other at the hearing on the injunction." *Bernhardt v. Los

19  *Angeles County*, 339 F.3d 920, 926 (9th Cir. 2003) (citation omitted).

20

**DISCUSSION**

21     Plaintiffs have not successfully shown a likelihood of success on the merits.  The

22  Court previously granted a Temporary Restraining Order because, at that time, the

23  City had apparently not communicated with Plaintiffs or actually provided Plaintiffs

24  with any reasonable accommodations.  This is no longer the case.  Considering each

25  of Plaintiffs' claims, it no longer appears that they are likely to succeed on the merits of

26  those claims or that Plaintiffs have raised serious questions going to the merits of

27  those claims.

28  ////

## I.    ADA Title II

Plaintiffs' first and primary claim is that the City has failed to provide reasonable accommodations for Plaintiffs' disabilities.  Title II of the ADA requires that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.  While this requires the City to make "reasonable modifications" to its policies, practices, and procedures to avoid discrimination on the basis of disability, it does not mandate that the City make modifications that would "fundamentally alter the nature of the service, program, or activity."  *McGary v. City of Portland*, 386 F.3d 1259, 1266 (9th Cir. 2004).  Title II also does not require that Plaintiffs create "new" programs in order to provide accommodations.  *Townsend v. Quasim*, 328 F.3d 511, 518 (9th Cir. 2003) ("It is clear from the language of Title II and the integration regulation that public entities are not required to create new programs that provide heretofore unprovided services to assist disabled persons.")

Here, the "program" in question is the implementation of Administrative Rule 7.10, which is the City's program for enforcement of its unlawful camping ordinance, cleanup of temporary shelters, and storage of unattended property.  Naturally, this is not a program that "benefits" Plaintiffs in any traditional sense.  Nevertheless, as a program implemented by the City, Title II still requires the City of Vallejo to take Plaintiffs' disabilities into account in how the City enforces its municipal code.  Put another way, "compliance with municipal code enforcement can constitute a benefit of the services, programs, or activities of a public entity under Title II."  *McGary v. City of Portland*, 386 F.3d 1259, 1269 (9th Cir. 2004).  Thus, the City must make reasonable modifications to its policies, practices, and procedures in implementing Rule 7.10 such that Plaintiffs are not subject to discrimination on the basis of their disability.

The City has now identified several accommodations that it can provide Plaintiffs.  In addition to the added time before removal that Plaintiffs have already

5

1   been permitted by virtue of the Court's Temporary Restraining Order, the City offered

2   a further extension until July 25, 2025.  The City also offered to store Plaintiffs'

3   belongings for at least 90 days and to provide transport to housing should Plaintiffs

4   succeed in their quest to secure a more permanent living situation.

5         In their Reply brief, Plaintiffs did not identify any additional accommodations

6   besides being permitted to remain in their present location until they secure housing.

7   At oral argument, the Court specifically inquired if there were other accommodations

8   they were requesting.  Plaintiffs only requested that they be permitted to remain

9   where they are or be provided with hotel vouchers until they could secure housing.  In

10  either case, this likely represents a modification that would fundamentally alter the

11  implementation of Rule 7.10.

12        As noted, section Rule 7.10 is an administrative rule enacted to enforce

13  unlawful camping ordinances and remove temporary shelters.  Permitting Plaintiffs to

14  stay in their present location until they obtain housing seemingly undermines the

15  fundamental purpose of the program.  Plaintiffs' declarations detail ongoing,

16  sometimes years-long, struggles with homelessness and lengthy searches for housing.

17  (*See* ECF No. 1-2 at 7–8 ¶ 5, 18 ¶ 4.)  This is not Plaintiffs' failing.  From the record

18  available to the Court, it appears that Plaintiffs are all in serious need of permanent

19  housing and genuinely desire such housing.  Indeed, at the hearing, the undersigned

20  was honored to speak to each of the Plaintiffs directly, and it was clear they have spent

21  considerable time and effort trying to locate housing, with no success.  If these

22  Plaintiffs, who face serious disabilities, are unable to find housing, it is abundantly

23  clear that it is the system itself that has failed, not Plaintiffs.  However, this also means

24  that permitting Plaintiffs to remain in their present locations would be an indefinite

25  delay in the enactment of Rule 7.10 and the removal of the encampment.  This would

26  not be a modification to the City's program, but what effectively is its nullification as it

27  relates to Plaintiffs for the foreseeable future.  As such, it is a modification that would

28  fundamentally alter the "program," that is, the enforcement of Rule 7.10.

1     Similarly, for the City to provide Plaintiffs with housing at hotels, the City would

2     need to create additional programs.  The ADA does not require the creation of "new

3     programs that provide heretofore unprovided services to assist disabled persons."

4     *Where Do We Go Berkeley v. Cal. Dep't of Transp.*, 32 F.4th 852, 862 (9th Cir. 2022)

5     (internal citations and quotations omitted).  While this is a very understandable

6     request, under the law this is unlikely to be a "reasonable accommodation" as that

7     term is understood in the context of the ADA.

8         In Plaintiffs' Supplemental Brief, filed the day before the Temporary Restraining

9     Order was set to expire, Plaintiffs suggest that their ADA claims do not only concern

10    the encampment removal actions.  (Suppl. Br. at 4.)  Plaintiffs then suggest that they

11    require accommodations as it relates to access to the Navigation Center.  (*Id.* at 5–6.)

12    However, the present action and Plaintiffs' original motion clearly concern Plaintiffs'

13    removal from their temporary housing locations and the implementation of Rule 7.10.

14    (*See* ECF No. 1.)  Whether Plaintiffs have been provided reasonable accommodations

15    as it relates to their ability to access temporary and transitional housing locations is

16    outside the scope of this action and the present Motion.

17        Also in the Supplemental Briefing, Plaintiffs suggest that they would accept

18    housing at "the Broadway Project" which Plaintiffs state is set to open on August 18,

19    2025.  (Suppl. Br. at 7.)  The suggestion that this represents a possible

20    accommodation the City can provide appears to be based on speculation.  According

21    to the Plaintiffs, the Broadway Project is not yet open, and it is unclear that Plaintiffs

22    are eligible for admission to the Broadway Project.  While the Court hopes that this

23    will ultimately present a solution for Plaintiffs' lack of housing, it is not sufficiently

24    concrete to reasonably require the City to provide it as an accommodation, and in any

25    event the possibility of future housing is only tangentially related to the City's

26    enforcement of Rule 7.10.  Plaintiffs have thus not met their burden to establish that

27

28

1  this is a reasonable accommodation that was denied or not provided.[1] *Mayfield v. City*

2  *of Mesa*, 131 F.4th 1100, 1110 (9th Cir. 2025).

3      In short, the City has now offered accommodations to Plaintiffs, and Plaintiffs

4  have not identified any further reasonable accommodations that the City could

5  provide but that it has not yet considered or provided.  *Id.* ("A plaintiff asserting a

6  reasonable-accommodation claim under Title II bears the initial burden of producing

7  evidence of the existence of a reasonable accommodation that was denied or not

8  provided." (cleaned up)).  As such, the Court cannot find at this stage that Plaintiffs will

9  likely be able to show that the City has violated Title II of the ADA by failing to provide

10  Plaintiffs with reasonable accommodations, or that there exist serious questions going

11  to the merits.[2]  Accordingly, Plaintiffs do not have a likelihood of success on the merits

12  of this claim.

13  **II.    State-Created Danger Doctrine**

14      Plaintiffs also have not established a likelihood of success on their claim under

15  the state-created danger doctrine.  The state-created danger doctrine arises from the

16  due process clause of the Fourteenth Amendment.  To state a claim under this

17  doctrine, Plaintiffs must establish three elements.  Plaintiffs must show "[1] that the

18  [state actors'] affirmative actions created or exposed [them] to an actual, particularized

19  danger that [they] would not otherwise have faced . . . [2] that the injury [they] suffered

20  was foreseeable . . . [3] that the [state actors] were deliberately indifferent to the

21  known danger."  *Martinez v. City of Clovis*, 943 F.3d 1260, 1271 (9th Cir. 2019).

22

23

24  [1] The Court strongly encourages the City to contemplate all possible avenues to assist Plaintiffs in securing housing whether at the Navigation Center, the Broadway Project, or elsewhere.

25
26  [2] At oral argument, Anthony Prince, General Counsel for the California Homeless Union appearing as an amicus, argued that the ADA requires that any determination that an accommodation created an undue burden or a fundamental alteration to the program must be made by the head of the public agency and
27  be accompanied by a written statement of the reasons for reaching that conclusion.  This is a procedural requirement that is easily rectified by the City.  As such, it does not alter the Court's analysis as to Plaintiffs' likelihood of success.

28

1        Notably, the first element requires that Plaintiffs identify an "actual,

2    particularized danger" that was created by a state actor's affirmative actions.  Plaintiffs

3    do not identify such a particularized danger here.  Plaintiff Hipp noted a variety of

4    benefits to his current location: the proximity of clinics and other resources, the

5    presence of security nearby, the fact that people know where to find him, and the

6    calming presence of the waterfront.  (ECF No. 1-2 at 3 ¶¶ 11–13.)  Plaintiff Tate

7    discussed the importance of access to the library for her autistic son, Plaintiff M.T., and

8    the adjacency of local facilities.  (*Id.* at 10–11 ¶¶ 15–19.)  Plaintiff Watson noted many

9    of the same benefits as the other Plaintiffs, as well as how her location assists in

10    managing her PTSD.  (*Id.* at 20 ¶ 7.)

11        The Court understands that the advantages provided by their current location

12    are significant given Plaintiffs' disabilities.  Similarly, the Court understands that

13    without the ability to remain in their current location, Plaintiffs will likely face

14    challenges and hazards.  Those challenges and hazards, however, are inherent in

15    being unhoused, which is why the homelessness crisis creates such a public health

16    emergency.  The state-created danger doctrine is not properly applied where, as

17    here, the dangers in question are generalized dangers inherent to homelessness that

18    are not created by the actions of a state actor.  *See Cobine v. City of Eureka*, 250 F.

19    Supp. 3d 423, 433 (N.D. Cal. 2017); *see also Koontz v. Town of Fairfax*, No. 25-cv-

20    01311-RFL, 2025 WL 1766046, *6-7 (N.D. Cal. 2025); *Coalition on Homelessness v.*

21    *City and County of San Francisco*, 758 F. Supp. 3d 1102, 1130 (N.D. Cal. 2024).

22    Rather, where courts have applied the state-created danger doctrine to attempts to

23    remove unhoused individuals, they generally rely on more concrete dangers, such as

24    present dangerous weather conditions, that can be considered actual and

25    particularized.  *See Sacramento Homeless Union v. County of Sacramento*, 617 F.

26    Supp. 3d 1179, 1193 (E.D. Cal. 2022) (finding a likelihood of success for claim under

27    the state-created danger doctrine where the county was seeking to "sweep"

28    encampments during extreme heat).  That is not the case here.  In their supplemental

1  brief, Plaintiffs argue that the dangers they face are "not generalizable to

2  homelessness; they are distinct dangers that are specific to each individual plaintiff[.]"

3  (Suppl. Br. at 4.)  But the dangers identified by Plaintiffs, while not universal

4  experiences for all who are homeless, are still generalized, persistent risks created by

5  Plaintiffs' disabilities and lack of housing.  They are not the sort of discrete, identifiable

6  dangers created by state actors that warrant the invocation of the state-created

7  danger doctrine.

8         As Plaintiffs have not identified an actual and particularized danger that was

9  created by a state actor or that Plaintiffs were exposed to by the actions of a state

10  actor, Plaintiffs have not established a likelihood of success on the merits, even under

11  a serious questions analysis, on their state-created danger cause of action.

12  **III.    Other Due Process Claims**

13        Separately from their state-created danger doctrine claim, Plaintiffs also allege

14  a violation of their substantive and procedural due process rights predicated on the

15  City's implementation of Rule 7.10.  In this claim Plaintiffs mainly reference language

16  from Rule 7.10's "Policy" section in which states in part that the City's intent is "to

17  promote a balanced approach to addressing potential negative impacts of

18  encampments" and that the Rule aims to "[e]numerate a continuum of response

19  options, emphasizing proportionality of response in relation to totality of

20  circumstances or impacts present at an encampment."  (Mot. at 18–19; Flor Decl. (ECF

21  No. 14), Ex. B at 1.)

22        To state a due process claim, Plaintiffs must establish that a state actor deprived

23  them of a constitutionally protected interest.  *Shanks v. Dressel*, 540 F.3d 1082, 1087,

24  1090 (9th Cir. 2008).  Plaintiffs have not established that they have been deprived of

25  any such interest by the actions of a state actor.  Rather, the quoted language in Rule

26  7.10 is merely precatory, and does not create any protected interest under the Due

27  Process Clause.  *Cf. Livadas v. Bradshaw*, 512 U.S. 107, 132 (1994) (noting that a

28  "particular statutory provision . . . may be so manifestly precatory that it could not fairly

1    be read to impose a binding obligation on a governmental unit." (quoting *Pennhurst*

2    *State Sch. and Hosp. v. Halderman,* 451 U.S. 1, 27 (1981)).  In their Reply, Plaintiffs

3    reference an interest in family integrity that is violated by criminal liability for Plaintiff

4    Tate.  (Reply at 13-14.)  But there is no indication that Plaintiff Tate presently faces

5    criminal charges or that the encampment removal proceedings at issue involve

6    criminal prosecution of those removed.  Plaintiffs do not have a likelihood of success

7    on their substantive and procedural due process claims due to their failure to identify

8    a protected interest violated by the City's encampment removal.[3]

9                                   **CONCLUSION**

10            As Plaintiffs have not established a likelihood of success on any of their claims,

11   the Court does not need to address the remaining *Winter* factors.[4]  *See Aargon*

12   *Agency, Inc. v. O'Laughlin*, 70 F.4th 1224, 1240 (9th Cir. 2023).  The Court will deny

13   Plaintiffs' Motion based on the failure to establish a likelihood of success on the merits

14   or serious questions going to the merits.

15            Accordingly, and for the foregoing reasons, IT IS HEREBY ORDERED that

16   Plaintiffs' Motion for Preliminary Injunction (ECF No. 5) is DENIED.  The Temporary

17   Restraining Order shall expire, as previously ordered, on July 25, 2025.  However,

18   under Administrative Rule 7.10 the City of Vallejo must provide at least 72-hours'

19
20
21
22
23
24
25

[3] In their Supplemental Brief, Plaintiffs allege that Defendants violated Plaintiff Watson's procedural due process rights and this Court's Temporary Restraining Order when it discarded Plaintiff Watson's belongings during the encampment removal proceedings.  While the Court understands that the loss of this property might seriously affect Plaintiff Watson, the Court does not address these issues here. The question presently before the Court is whether preliminary injunctive relief enjoining the City from removing Plaintiffs is warranted.  Preliminary injunctive relief based on the disposal of Plaintiffs' personal property is not warranted as this is both a past harm and a harm for which economic damages are the appropriate remedy.  *See Rent-A-Center, Inc. v. Canyon Television & Appliance Rental, Inc.,* 944 F.2d 597, 603 (9th Cir. 1991) ("[E]conomic injury alone does not support a finding of irreparable harm, because such injury can be remedied by a damage award." (internal citation omitted)).  Similarly, if there was a violation of the Court's prior order, some remedy might be warranted.  But that is an issue that must be addressed separately and does not alter the outcome of this Order.

26
27
28

[4] The Court notes that, as pro se individuals, Plaintiffs' claims are subject to the screening requirements of 28 U.S.C. § 1915(e)(2)(B).  Pursuant to the Local Rules, pre-trial proceedings in this matter are referred to the assigned Magistrate Judge.  *See* Local Rule 302(c)(21).  Through this Order, the Court takes no position on the result of that screening order, and nothing in this Order should be read to suggest a particular result.

1   notice in writing to Plaintiffs before seeking to remove Plaintiffs' encampments.  This

2   matter is referred to the assigned Magistrate Judge for all further pretrial

3   proceedings.

4

5          IT IS SO ORDERED.

6   Dated:   **July 24, 2025**

7                                                    Hon. Daniel J. Calabretta
                                                    UNITED STATES DISTRICT JUDGE

8

9

10

11  DJC1 – Hipp25cv01806.pi

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28